UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

    Plaintiff,

    v.        Case No.

APPROXIMATELY 424,025.249923 TETHER (USDT)
CRYPTOCURRENCY FROM CRYPTOCURRENCY
ADDRESS ENDING IN etsvcDm1,

APPROXIMATELY 225,619.197222 TETHER (USDT)
CRYPTOCURRENCY FROM CRYPTOCURRENCY
ADDRESS ENDING IN ekDUUo8o, and

APPROXIMATELY 462,000.22 TETHER (USDT)
CRYPTOCURRENCY FROM CRYPTOCURRENCY
ADDRESS ENDING IN P9MUhwMZ,

    Defendants.

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Laura S. Kwaterski, Assistant United States Attorney for this district, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**Nature of the Action**

1. This is a civil action to forfeit properties to the United States of America, under 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6), for violations of 18 U.S.C. §§ 1956, 1957, and 1960 and 21 U.S.C. §§ 841(a) and 846.

**The Defendants In Rem**

2. The defendant property, approximately 424,025.249923 Tether (USDT)[1] cryptocurrency from cryptocurrency address ending in etsvcDm1, was seized on or about February 18, 2025, in Road Town, Tortola, British Virgin Islands.

3. The defendant property, approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o, was seized on or about February 18, 2025, in Road Town, Tortola, British Virgin Islands.

4. The defendant property, approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ, was seized on or about February 18, 2025, in Road Town, Tortola, British Virgin Islands.

5. The Drug Enforcement Administration seized the defendant property, approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1, pursuant to seizure warrant 25-825M issued by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin on February 18, 2025.

6. The Drug Enforcement Administration seized the defendant property, approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o, pursuant to seizure warrant 25-826M issued by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin on February 18, 2025.

7. The Drug Enforcement Administration seized the defendant property, approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in

---

[1] Tether, often referred to by its currency code of USDT, is a stablecoin cryptocurrency with a value meant to mirror the value of the United States dollar. USDT tokens are backed by offshore banks. Offshore banks offer fewer charges for operation and tax benefits, but they are not always fully secure like the FDIC-insured United States banks.

P9MUhwMZ, pursuant to seizure warrant 25-827M issued by United States Magistrate Judge Nancy Joseph in the Eastern District of Wisconsin on February 18, 2025.

8. The defendant properties are presently in the custody of the United States Marshal Service in Arlington, Virginia.

## Jurisdiction and Venue

9. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

10. This Court has *in rem* jurisdiction over the defendant properties under 28 U.S.C. § 1355(b).

11. Venue is proper in this judicial district under 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

## Basis for Forfeiture

12. The defendant property, approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1, is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

13. The defendant property, approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1, is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because (1) it was involved in, or is traceable to funds involved in, money laundering transactions and a conspiracy to engage in money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and (2) it was involved in, or is traceable to funds involved in, unlicensed money transmitting in violation of 18 U.S.C. § 1960.

14. The defendant property, approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o, is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

15. The defendant property, approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o, is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because (1) it was involved in, or is traceable to funds involved in, money laundering transactions and a conspiracy to engage in money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and (2) it was involved in, or is traceable to funds involved in, unlicensed money transmitting in violation of 18 U.S.C. § 1960.

16. The defendant property, approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ, is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

17. The defendant property, approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ, is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because (1) it was involved in, or is traceable to funds involved in, money laundering transactions and a conspiracy to engage in money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and (2) it was involved in, or is traceable to funds involved in, unlicensed money transmitting in violation of 18 U.S.C. § 1960.

**Facts**

18. Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812.

19. Methamphetamine is a Schedule II and Schedule III controlled substance under 21 U.S.C. § 812.

**Background**

20. Drug trafficking organizations ("DTOs") generate large amounts of cash proceeds in the United States and elsewhere. In order to repatriate their cash proceeds from the United States and other countries back to their country of origin where they can be used by the DTO members, DTOs often employ professional money launderers. For a fee, professional money launderers provide the DTO with currency in the DTO's native country in exchange for bulk currency in the country where the DTO's narcotics are distributed.

21. Professional money launderers use a variety of methods to accomplish their goals, including trade-based money laundering, bulk currency smuggling, and virtual currency trading.

22. Virtual currency, also known as cryptocurrency, is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency (i.e., currency created and regulated by a government). Cryptocurrency is not issued by any government, bank, or (with limited exceptions) companies. It is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

23. Cryptocurrency can be quickly transmitted directly between parties and across national borders without the need for a facilitating third party like a traditional financial institution. Many cryptocurrencies, including Bitcoin and Tether, operate via a "blockchain," a record (or ledger) of every transaction ever conducted that is distributed throughout the network. The blockchain will not list the names of parties to the transaction but will list the date and time of the

transaction, the originating and receiving public address, and how much cryptocurrency was transferred.

24. Based on their training and experience, and their knowledge and information garnered from money launderers in this case and similar cases, agents know that cryptocurrency transactions are often used to launder the proceeds derived from narcotic traffickers. More specifically,

      A.    Narcotics traffickers in source countries (e.g., Mexico and Colombia) provide narcotics to consumer countries (e.g., the United States).

      B.    The bulk currency proceeds derived from the sale of these narcotics are then returned to the narcotics traffickers within the source countries using various methods, including the use of cryptocurrencies. In this case, the narcotics traffickers often contacted brokers, or professional money launderers, who were responsible for collecting the bulk currency within the consumer countries and depositing the currency into the United States banking system.

      C.    The brokers often then paid out the narcotics traffickers in fiat currency within the source countries, minus a commission, and sold the cryptocurrency to a separate "crypto" broker. The commission fee was generally between three percent and five percent.

      D.    The cryptocurrency broker may have then conducted a series of cryptocurrency transactions across multiple cryptocurrency exchanges using an array of methods (e.g., cryptocurrency scrambler) in an effort to obfuscate the true origin of the money. The cryptocurrency brokers often then sold the cryptocurrency in the "black market" in exchange for various fiat currencies.

**International drug trafficking and money laundering organization**

25. Since approximately November 2020, agents with the Drug Enforcement Administration in Milwaukee, Wisconsin, ("DEA Milwaukee") have been investigating several money laundering brokers from Mexico and Colombia who are responsible for laundering suspected drug proceeds in the United States back to source countries and elsewhere, mainly via cryptocurrency.

6

26. A confidential source ("CS-1") began working with agents and was able to insert themself as a person capable of fulfilling money pickup[2] contracts in the United States, converting the bulk currency to cryptocurrency, and delivering the cryptocurrency to its desired location.

**July 2024 money pickup in Atlanta, Georgia, arranged by J.H.T.E.**

27. Beginning in 2021, CS-1 began to receive money pickup contracts from several Mexico and Colombia-based money brokers, including a money broker having the initials J.H.T.E.

28. Between December 2021 and March 2022, at the direction of agents, CS-1 accepted twelve money laundering contracts totaling approximately $1,234,060 in United States currency—suspected drug proceeds—in Philadelphia, Pennsylvania; Nashville, Tennessee; Boston, Massachusetts; St. Louis, Missouri; Chicago, Illinois; and New York, New York. In each of those instances, J.H.T.E. coordinated the pickup and provided CS-1 with a cryptocurrency address to send Tether (USDT) cryptocurrency.

29. In July 2024, J.H.T.E. offered a money pickup contract to CS-1 to pick up $50,000 of suspected drug proceeds in Atlanta, Georgia, convert the United States currency to USDT, and transfer it to a USDT address provided by J.H.T.E. At the direction of agents, CS-1 accepted the contract and provided J.H.T.E. with a phone number used by an undercover agent ("UC") and a dollar bill serial number to be used to verify the pickup.[3]

30. In July 2024 on the arranged pickup date, DEA Atlanta agents established surveillance at the agreed upon location in Atlanta, Georgia. Agents saw a male, later identified as

---

[2] A money pickup occurs when, in this case, a Mexico-based money broker offers a contract to someone to pick up suspected drug proceeds in the United States, minus a commission, convert it to cryptocurrency, and transfer the cryptocurrency to the money broker.

[3] Based on their training and experience, agents know that money launderers verify they are coordinating with the correct money courier by comparing a serial number of a dollar bill that was previously arranged as part of the money pickup.

an individual having the initials S.A., exit his vehicle and provide the UC with a cardboard box that contained $36,000 in United States currency.

31. On the same date, the $36,000 in United States currency received from S.A. was deposited into a DEA Milwaukee undercover account. After taking a small commission for laundering the funds, DEA Milwaukee agents converted the remaining United States currency to USDT.

32. Three days later, DEA Milwaukee agents sent 34,891.74772 USDT to address ending in f702eed5 ("f702eed5"), the deposit address provided to CS-1 by J.H.T.E. Approximately ninety-eight (98) minutes after the transfer of 34,891.74772 USDT to f702eed5, 34,165.1 USDT was sent from f702eed5 to address ending in 5f80ab6a ("5f80ab6a").

> A. Address 5f80ab6a is categorized as an unhosted wallet, meaning it is not connected to a virtual currency exchange that would require Know Your Customer (KYC) information.[4] Based on training and experience, agents know that money launderers commonly use unhosted wallets to remain anonymous and avoid law enforcement detection.
>
> B. With an unhosted wallet, a user needs "gas" to send USDT via the Ethereum or Tron network. Gas is the fee required to successfully conduct a transaction or execute a contract on the Ethereum or Tron blockchain platform. By following the trail related to "gas fees," agents can connect individuals associated with the unhosted wallet because "gas fees" can generally be traced to a virtual currency exchange that requires KYC.
>
> C. Blockchain records show that on May 2, 2024, address 5f80ab6a received its first incoming ETH[5] transfer (gas fee) of 0.01806596 ETH from address ending in 1343963d ("1343963d"), an address associated with Binance.
>
>> i. Binance records show that the transfer of the 0.01806596 ETH originated from Binance user ID ending in 2244 ("Binance 2244"). Binance 2244 was registered to an individual having the initials C.C.C.

---

[4] KYC is the process that banks and other financial institutions use, in part, to verify a customer's identity when opening an account.

[5] ETH is used to pay gas fees on the Ethereum network.

  ii. Binance records show that C.C.C. had a Mexican voter identification card.

  iii. According to IP login information, C.C.C. primarily logged into Binance 2244 from Culiacan, Mexico.

 D. Based on their training and experience, and the investigation to date, agents believe that C.C.C. is associated with 5f80ab6a.

33. Blockchain records show that in July 2024, 5f80ab6a sent two transactions to Binance. The first transaction was 4,158 USDT and the second transaction was 13,027.25 USDT. Those two transactions from 5f80ab6a to Binance were made ten and eleven days, respectively, after 5f80ab6a received the 34,165.1 USDT from f702eed5, as described in paragraph 32.

 A. Binance records show that those transfers of 4,158 USDT and 13,027.25 USDT were both sent to Binance user ID ending in 5579 ("Binance 5579"). Binance 5579 was registered to an individual having the initials M.C.Q.

 B. Binance records show that M.C.Q. had a Mexican voter identification card.

 C. According to IP login information, M.C.Q. primarily logged into Binance 5579 from Culiacan, Mexico, and on one occasion had used the exact same IP address as C.C.C.

34. Binance records further show that in July 2024, following the transfers of 4,158 USDT and 13,027.25 USDT into Binance 5579 referenced in paragraph 33, M.C.Q. sent two outgoing transfers of USDT from Binance 5579 as follows:

 A. 4,240.243046 USDT was sent from Binance 5579 to address ending in HDEtMwBo ("Related Address 1"). This transfer was made on the same day as the transfer of 4,158 USDT into Binance 5579 referenced in paragraph 33; and

 B. 13,026.25 USDT was sent from Binance 5579 to address ending in xAcFyEDX ("xAcFyEDX"). This transfer was made the day after the transfer of 13,027.25 USDT into Binance 5579 referenced in paragraph 33.

35. Blockchain records show that on July 3, 2024, Related Address 1 received its first incoming TRX[6] transfer (gas fee) of 249 TRX from address ending in v9TXc32G ("v9TXc32G"), an address associated with Binance. Binance records show that the transfer of the 249 TRX to Related Address 1 originated from Binance 2244 – the account registered to C.C.C. that provided gas for 5f80ab6a, as referenced in paragraph 32C.

36. Blockchain records further show that in early August 2024, xAcFyEDX[7] sent 45,000 USDT to address ending in sVYPKEsx ("sVYPKEsx"). Blockchain analysis shows that between July 25, 2024, and August 15, 2024, sVYPKEsx sent a total of 314,774 USDT in four transactions to Related Address 1.

**J.L.V.'s involvement in the drug trafficking and money laundering organization**

37. A second confidential source ("CS-2") was offered money pickup contracts from an individual having the initials J.L.V. The money pickups were in the United States, with conversion to cryptocurrency and then transfer of USDT via the Tron network to the specified locations.

38. In January 2025, DEA agents in San Jose, Costa Rica, confirmed with DEA Milwaukee agents that J.L.V. was being investigated as part of an organization importing approximately 1,000 to 2,000 kilograms of cocaine from Colombia to Costa Rica every two months. Once in Costa Rica, part of the cocaine was sold to local traffickers, and the rest of the cocaine was sent to the United States, Europe and elsewhere.

---

[6] TRX is used to pay gas fees on the Tron network.

[7] xAcFyEDX is the address that received 13,026.25 USDT from Binance 5579 in July 2024, as referenced in paragraph 34B.

**Cryptocurrency address ending in etsvcDm1, the address from which the defendant approximately 424,025.249923 Tether (USDT) cryptocurrency was seized**

39. In January 2025, CS-2 informed agents that J.L.V. was looking to convert approximately 200,000 USDT from ERC-20[8] to TRC-20[9] and that J.L.V. had the USDT in address ending in 8232ff00 ("8232ff00"). J.L.V. had provided Related Address 1 as the receiving address.

40. Blockchain records show that on January 23, 2025, at 20:04 UTC, 207,763.992836 USDT was sent to 8232ff00.

41. Based on their investigation, agents learned that the Federal Bureau of Investigation ("FBI") had an investigation in which, on January 23, 2025, FBI conducted a money pickup of over $200,000 in suspected drug proceeds in New York, New York, brokered by a Colombian money broker, which funds were later traced to 8232ff00.

42. Blockchain records show that on January 23, 2025, at 23:45 UTC, 8232ff00 sent 198,220 USDT to an OKX cryptocurrency account. The funds were transferred to TRC-20, and on January 24, 2025, at 01:57 UTC, 197,160 USDT was sent to Related Address 1.

43. Blockchain records show that on January 24, 2025, at 03:24 UTC, Related Address 1 received 85,824 USDT from address ending in yGnx2aaf ("Related Address 2").

44. Related Address 1 combined the 197,160 USDT and 85,824 USDT, along with other deposits, and on January 24, 2025, at 14:30 UTC, sent 542,912.534818 USDT to address ending in etsvcDm1, the address from which the defendant approximately 424,025.249923 Tether (USDT) cryptocurrency was seized ("Subject Address etsvcDm1").

---

[8] ERC-20 is a standard to which Ethereum-based tokens must adhere.

[9] TRC-20 is a standard to which Tron-based tokens must adhere.

45. Subject Address etsvcDm1 is an unhosted wallet. Blockchain analysis shows that on September 3, 2024, at 18:10 UTC, Subject Address etsvcDm1 received its first incoming gas fees of 330.697499 TRX from address ending in m9t1pYBS ("m9t1pYBS").

46. Address m9t1pYBS has been involved in three transactions with Related Address 2, including receiving 200 TRX for gas fees on May 21, 2024.

47. Blockchain records show that between September 3, 2024, and February 4, 2025, Subject Address etsvcDm1 received approximately $2,212,476 in cryptocurrency and withdrew approximately $1,787,817 in cryptocurrency. Subject Address etsvcDm1 often had a zero balance.

48. Blockchain records also show that on January 11, 2025, at 02:57 UTC, Subject Address etsvcDm1 sent 189,000 USDT to Related Address 2, and on January 14, 2025, at 22:16 UTC, Subject Address etsvcDm1 received 32,000 USDT from Related Address 2.

49. Related Address 2 is an unhosted wallet. Blockchain analysis shows that Related Address 2 directed transactions to three unhosted wallets that had been Blocklisted[10] by Tether. One of the Blocklisted wallets was address ending in XkPYyCSJ ("XkPYyCSJ"). In April 2024 during this investigation, Related Address 2 sent a total of 1,136,183 USDT in five transactions to XkPYyCSJ before that address was frozen at the request of agents.

50. Blockchain records show that on February 4, 2025, Related Address 2 sent 393.811406 TRX to Binance 5579, which account is registered to M.C.Q. as referenced in paragraphs 33 and 34.

---

[10] Blocklisted is a process in which Tether freezes USDT in an unhosted wallet, often at the request of law enforcement for suspected illegal or suspicious activity.

**Cryptocurrency address ending in ekDUUo8o, the address from which the defendant approximately 225,619.197222 Tether (USDT) cryptocurrency was seized**

51. Blockchain analysis shows that on January 24, 2025, at 14:34 UTC, Related Address 2 sent 251,185.280815 USDT to address ending in ekDUUo8o, the address from which the defendant approximately 225,619.197222 Tether (USDT) cryptocurrency was seized ("Subject Address ekDUUo8o").

52. Subject Address ekDUUo8o is an unhosted wallet. Blockchain records show that on May 17, 2024, at 17:25 UTC, Subject Address ekDUUo8o received its first incoming gas fee of 1,593.265564 TRX from Binance 2244, which account is registered to C.C.C. as referenced in paragraphs 32C and 35.

53. Blockchain records show that on December 19, 2024, Subject Address ekDUUo8o received 40,000 USDT from Related Address 1 and in January 2025 sent 456,000 USDT to Related Address 1. Furthermore, between July 2024 and January 2025, Subject Address ekDUUo8o received approximately 1,250,586 USDT from Related Address 2.

**Cryptocurrency address ending in P9MUhwMZ, the address from which the defendant approximately 462,000.22 Tether (USDT) cryptocurrency was seized**

54. Blockchain analysis of Related Address 1 shows an outgoing transfer on January 25, 2025, at 14:58 UTC, of 462,000 USDT to address ending in P9MUhwMZ, the address from which the defendant approximately 462,000.22 Tether (USDT) cryptocurrency was seized ("Subject Address P9MUhwMZ").

55. Subject Address P9MUhwMZ is an unhosted wallet. Blockchain records show that on January 27, 2025, Subject Address P9MUhwMZ received its first incoming gas fee of 50 TRX from address ending in Q4dhaYie ("Q4dhaYie").

13

56. Records show that on January 26, 2025, at 23:50 UTC, Q4dhaYie received its first incoming gas fee of 263.038824 TRX from address ending in kT74uhws ("kT74uhws"). Records show that on January 22, 2025, at 19:21 UTC, kT74uhws received 400,000 USDT from Related Address 1.

57. Based on their training and experience, and the investigation to date, agents believe that Related Address 1 and Related Address 2 were used by the money laundering organization to "pool" suspicious deposits before sending them to other deposit addresses, including Subject Address etsvcDm1, Subject Address ekDUUo8o, and Subject Address P9MUhwMZ from which the defendant properties were seized.

58. Based on their training and experience, and the investigation to date, agents believe that Subject Address etsvcDm1, Subject Address ekDUUo8o, and Subject Address P9MUhwMZ, from which the defendant properties were seized, were used to facilitate the movement of illegal proceeds derived from the sale of narcotics and to obfuscate the true origin of the funds.

59. Based on their training and experience, and the investigation to date, agents believe that J.L.V., C.C.C. and others used unhosted wallets – including Subject Address etsvcDm1, Subject Address ekDUUo8o, and Subject Address P9MUhwMZ, from which the defendant properties were seized – to avoid law enforcement detection, remain anonymous, and to launder "dirty" cryptocurrency.

60. Based on their training and experience, and the investigation to date, agents believe that Subject Address etsvcDm1, Subject Address ekDUUo8o, and Subject Address P9MUhwMZ, from which the defendant properties were seized, were involved in an international money laundering operation connected to J.L.V., C.C.C. and others.

**Warrant for Arrest In Rem**

61. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**Claim for Relief**

62. The plaintiff repeats and incorporates by reference the paragraphs above.

63. By the foregoing and other acts, the defendant property, approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1, represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

64. The defendant approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1 is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

65. By the foregoing and other acts, the defendant property, approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1, (1) was involved in, or is traceable to funds involved in, money laundering transactions and a conspiracy to engage in money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and (2) was involved in, or is traceable to funds involved in, unlicensed money transmitting in violation of 18 U.S.C. § 1960.

66. The defendant approximately 424,025.249923 Tether (USDT) cryptocurrency from cryptocurrency address ending in etsvcDm1 is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

67. By the foregoing and other acts, the defendant property, approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o, represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

68. The defendant approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

69. By the foregoing and other acts, the defendant property, approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o, (1) was involved in, or is traceable to funds involved in, money laundering transactions and a conspiracy to engage in money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and (2) was involved in, or is traceable to funds involved in, unlicensed money transmitting in violation of 18 U.S.C. § 1960.

70. The defendant approximately 225,619.197222 Tether (USDT) cryptocurrency from cryptocurrency address ending in ekDUUo8o is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

71. By the foregoing and other acts, the defendant property, approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ, represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

72. The defendant approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

73. By the foregoing and other acts, the defendant property, approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ, (1) was involved in, or is traceable to funds involved in, money laundering transactions and a conspiracy to engage in money laundering in violation of 18 U.S.C. §§ 1956 and 1957; and (2) was involved in, or is traceable to funds involved in, unlicensed money transmitting in violation of 18 U.S.C. § 1960.

74. The defendant approximately 462,000.22 Tether (USDT) cryptocurrency from cryptocurrency address ending in P9MUhwMZ is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant properties be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant properties to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 11th day of July, 2025.

Respectfully submitted,

RICHARD G. FROHLING
Acting United States Attorney

By: *s/LAURA S. KWATERSKI*
Assistant United States Attorney
Laura S. Kwaterski Bar Number: 1055485

Attorney for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: laura.kwaterski@usdoj.gov

## Verification

I, Kellen Williams, hereby verify and declare under penalty of perjury that I am a Special Agent with the Drug Enforcement Administration ("DEA") in Milwaukee, Wisconsin, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 18 through 60 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 07/11/2025         *s/Kellen Williams*
                          Kellen Williams
                          Special Agent
                          Drug Enforcement Administration